Howry, Judge,
delivered the opinion of the court:
Defendants have filed a motion requesting the court to vacate the “judgment” rendered in this matter and grant unto them a new trial because the cotton alleged to have been taken from the claimant and used by the United States troops for bedding in a field encampment was not commissary supplies nor yet quartermaster stores “ within the meaning of the bill referred to the court under section 14 of the act of March 3,1887,24 Stat. L., 505, commonly known as the Tucker Act.” Secondly, because it was not shown by the testimony what proportion of the cotton so taken was used for the purposes of bedding and what proportion of the cotton admitted to have been left scattered on the ground was afterwards destroyed by the elements.
The court being without power to render judgment in a proceeding of this character, the motion goes to the action of the court in making up an advisory report solely for the information of Congress.
It is argued that cotton has not been considered either as commissary supplies or quartermaster stores, and that bedding, other than blankets, has never been furnished by the Quartermaster’s Department to soldiers of an army in camp during military operations; that mattresses have been used during such operations in the hospital service and that cotton has also been used for that purpose and properly been allowed for as quartermaster stores, but not as commissary supplies. And, again, that cotton destroyed during operations in hostile territory is not a proper subject for “ allowance ” within the jurisdiction of the court.
On the hearing the court did not make, strictly speaking, an allowance. The court did make findings with a conclusion and did say that a corps of 15,000 or 20,000 men (being *68 a part of the military forces in North Carolina commanded by Gen. W. T. Sherman) camped in the immediate vicinity-of the place where the cotton in bales was in storage, cut open and made beds out of it for the use of the troops over the camp; and that the petitioner had requested a finding under the rules showing that these troops by authority took from the owners for the use of these men 80 bales of cotton of the value of $20,000, 49 C. Cls., 730. One-fourth of that sum was stated to be the value to petitioners of the quantity used.
As we were only reporting the results to Congress, the court must overrule the motion on this ground. A quantity of cotton having been appropriated and applied to the usé of the men in camp, and the appropriation being duly authorized, it was unnecessary on the part of the court to denominate the property so taken as such a supply as forbade the court from stating the facts. In the view of the court there is the same authority to report the facts to Congress of the taking and the use made of it as if the cotton had been used for hospital purposes.
As to the quantity taken and used, the court said in its first report that it had been most difficult in considering and weighing the testimony — after two presentations of the case — to determine just what weight should be given to the testimony relating to the quantity actually used, but that a considerable quantity had been taken; that the owners were in the cotton business, and it was reasonably established that they had in storage a quantity of the staple much in excess of the amount which the court was able to say had been appropriated. Reviewing the testimony, the court adheres to the former report as to the quantity, value, and amount. In the report it appears that it was established that at the time and place of taking the value of the cotton used by the troops was reasonably worth the sum stated in the original findings. That is, the loss to the petitioners was the amount there appearing. But the second finding is now amended so as to add that it does not appear what the value was to the Government of the cotton actually taken and used. There are no facts available and useful on this *69 point. The measure of relief must be left to the discretion of Congress on such facts as we have been able from the evidence to find.
Though no point is made by defendants as to the form of the conclusion, the court of its own motion will change it. As stated, the conclusion appears to have been that upon the findings the claim was to be deemed an equitable one in the sense that the United States received the benefit of the supplies for which claim is made. Eliminating technical terms, we characterize the property used as cotton. And as to the statement that the claim is equitable in the sense that the United States received the benefit of the cotton for the use of the troops for bedding purposes, it should go without saying that the claim was not reported as equitable in the juridical sense, but was so qualified as to show the want of a strictly legal or equitable status. The claimants were found to have been loyal throughout the war. We have not been asked to review that part of the proceedings. Notwithstanding their loyalty, there was no forum open to the claimants for the recovery of any judgment or decree in the juridical sense. Because of the uses made of findings in Congress by some claimants, insisting there that the court had in declaring claims to be legal or equitable and insisting that the court had by that finding entered “ judgment or decree ” in their favor, the court has been obliged to explain its conclusions in different language. We do so in this case and for a reason stated in other cases of this class.
The findings of the court as heretofore made and as amended will be transmitted to Congress with the conclusion that the claim is neither legal nor equitable in the juridical sense, but is transmitted for such action as the legislative branch of the Government shall see fit to take on the facts found.
The original findings as now amended, together with the substituted conclusion, will accordingly be transmitted to Congress, the motion for new trial being overruled.